IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Dunes West Residential Gold Properties, Inc., | ) ) ) | |
| Plaintiff, | ) ) | C/A No. 2:05-1354-DCN |
| vs. | ) ) ) | **ORDER and OPINION** |
| Essex Insurance Company, | ) ) | |
| Defendant. | ) ) | |

## I.  BACKGROUND

This matter is before the court on defendant Essex Insurance Company's ("Essex") second motion for summary judgment. Essex previously sought a determination that its CGL policy issued to insured plaintiff Dunes West Residential Gold Properties, Inc., ("Dunes West") was void due to fraud and misrepresentation. This court denied the motion by oral order on December 28, 2005. Essex now contends that one or more of that policy's provisions and/or exclusions preclude coverage.

In April 1998 Scratch Gold Company ("Scratch"), the company operating the golf course at Dunes West, sued Dunes West for breach of contract over a dispute involving access to the front gate of the development. In November 1999 the complaint was amended to add a breach of contract claim for failure to maintain the water quality in the storm water drainage system and failure to maintain and repair the irrigation system.[1] In

---

[1] According to Scratch's complaint, Dunes West has assumed its predecessor's obligation to maintain the lagoon system's water quality. The 1991 sales agreement transferring the golf course to Scratch specified that Dunes West Joint Venture's ("DWJV") predecessor would retain responsibility for upkeep of the water systems. (Scratch compl. ¶¶ 12-13.) The complaint asserts plaintiff Dunes West purchased assets

January 2002 Scratch amended its complaint again to include a negligence claim for the same alleged failure to maintain/repair. According to Essex, a third amended complaint was filed May 12, 2002. Dunes West notified Essex of a possible claim and demanded a defense. Essex denied a defense, and Dunes West initiated this suit on March 31, 2005, alleging breach of contract, bad faith, and bad faith refusal to pay.

Dunes West's policy with Essex covered the period from December 7, 2001 to December 7, 2002. The policy was cancelled for non-payment of premiums effective June 22, 2002.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when, after considering the full evidentiary record, there are no genuine issues of material fact. Fed. R. Civ. P. 56(c). When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by "pointing out to the court that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Evidence should be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, a "mere scintilla" of evidence will not preclude summary judgment. The court's inquiry is "not whether there is literally no evidence, but whether there is any [evidence] upon which a jury could properly . . . find a verdict for the party" resisting summary judgment. Id. at 251.

---

of DWJV in 1998 and assumed DWJV's obligations, including the upkeep responsibilities. (Scratch compl. ¶¶ 10, 14.)

**III.     DISCUSSION**

Scratch's most recent complaint alleges two instances of property damage.  First, the valve between the irrigation pond and salt marsh is defective or has deteriorated, permitting salt water to flow into the irrigation pond and enter the irrigation system.  The pipes connecting the valves to the irrigation pond are also allegedly leaking.  These conditions result in salt water on the golf course, which has damaged the appearance and growth of grass.  The salt has also damaged the irrigation equipment.  Scratch contends Dunes West has refused to repair or replace this equipment.

The second instance of property damage involves the related issue of storm water drainage.  Scratch contends the drainage pipes are filled with sediment, causing periodic flooding in heavy rain.  The flooding has submerged parts of the course, damaging the number four green.  Scratch also contends various storm water infrastructure ("connection boxes" containing valves and pipes) are falling apart.  According to Scratch, Dunes West has failed to maintain or repair the irrigation system.

Essex contends Dunes West's claims are meritless because one or more policy exclusions and/or provisions preclude coverage.

    **a.     Expected or Intended Injury Exclusion**

The "Expected or Intended Injury" exclusion prohibits coverage for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Policy § I.2.a.  Property damage is defined as "physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it." § V.17.a.

At first glance, this exclusion seems to apply to the case at bar. As noted, the damage is the damaged grass and flooded course. Dunes West was aware of both situations prior to applying for insurance with Essex. The grass damage was detailed in Scratch's 1999 complaint and in a July 16, 2001 analysis by Albrecht Environmental Inc. (Pl.'s memo in opp., doc. 42, ex. H). The Albrecht study could not "conclusively document salt water intrusion into the irrigation ponds;" however, it is uncontroverted that Dunes West knew something was damaging the grass. Id. Similarly, the flooding was described in the 1999 complaint and in an October 1, 1999 letter from Seamon, Whiteside & Associates, Inc. (Pl.'s memo in opp., doc. 42, ex. C). While Dunes West contends it was not responsible for maintenance of the course, it was aware of the flooding damage.

South Carolina courts have applied the "expected or intended damage" exclusion through the lens of intentional damage, not expected damage. Vermont Mutual Insurance Co. v. Singleton, 316 S.C. 5, 446 S.E.2d 417 (1994) addressed an insurer's obligation to a insured who punched a third party. Insurer denied coverage by citing an exclusion for "bodily injury . . . which is expected or intended by the insured." The South Carolina Supreme Court labeled this provision the "intentional act exclusion" and cited a two part test for its application: first, the act causing the loss must be intentional, and second, the results of the act must be intended. Vermont, 316 S.C. at 8, 446 S.E.2d at 419. The court upheld the lower court's determination that the exclusion did not apply because the insured did not intend a specific result (extensive eye injuries).

Vermont clearly requires the two prong test in applying the "expected or

4

intentional damage" exclusion. Essex's logical assertion - that coverage is excluded if the damage is expected - would command a different result in Vermont. The Vermont court concluded that the insured intended to strike the third party; as such, surely any damage from that act was to be expected. But the supreme court did not focus on expected damage. Rather, the court requires the resulting damage to be intentional. However logical in the present circumstance, excluding coverage for mere "expected" damage is inconsistent with Vermont.

Applying Vermont's two-prong test, the "expected or intentional damage" exclusion does not exclude coverage in the case at bar. Essex only asserts the damages were expected. There is no evidence that Dunes West intentionally maintained the course in a negligent manner or intended to flood the course, salinate the irrigation water or damage the grass. At best, the record reflects a disputed issues of fact as to what caused the grass burn. Therefore, the "expected or intended damage" exclusion does not exclude coverage.

### b.    Contractor Limitation Endorsement

This provision excludes coverage for

> "[B]odily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of inadequate, improper, faulty or defective construction:
> 1.    Which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process or occurring to any degree, as of the inception date of this policy;
> 2.    Causing incremental, continuous or progressive damage arising from an occurrence which first occurred, began to occur or is alleged to have occurred prior to the inception date of this policy.

Contractor Limitation Endorsement (remaining three subsections not relevant). This

exclusion applies to damage resulting from faulty construction. Dunes West did not construct the infrastructure at issue. Further, Scratch's allegations against Dunes West concern inadequate maintenance, not construction. The alleged damage does not "aris[e] out of" construction issues. Therefore, the "contractor limitation" exclusion does not apply.

### c. Occurrence

Essex contends there was no occurrence within the coverage period. The policy defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." §V.13. Essex identifies the occurrence as the faulty construction of the irrigation and drainage system, which occurred prior to the coverage period. Essex further suggests that negligent failure to maintain cannot be an occurrence because such acts are not an "accident." Dunes West identifies two occurrences: the first arising from the faulty construction, which is not covered, and the alleged failure to maintain, which is within the coverage period.

"Insurance policies are to be liberally construed in favor of the insured and strictly construed against the insurer," and any ambiguity in the policy "must be construed most favorably to the insured." State Auto Property and Casualty Co. v. Brannon, 310 S.C. 388, 391, 426 S.E.2d 810, 812 (Ct. App. 1992).

Since the policy does not define "accident," it should be defined "according to the ordinary and usual understanding of the term's significance to the ordinary person." USAA Prop. and Cas. Ins. Co. v. Rowland, 312 S.C. 536, 540, 435 S.E.2d 879, 881 (Ct. App. 1993). South Carolina's highest courts have defined accident as "an effect which

the actor did not intend to produce and cannot be charged with the design of producing," see Manufacturers and Merchants Mutual Insurance Co v. Harvey, 330 S.C. 152, 159, 498 S.E.2d 222, 225 (Ct. App. 1998) (quoting Goeth v. New York Life Ins. Co., 183 S.C. 199, 190 S.E.2d 451 (1937)), and "[a]n unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt," Green v. United Ins. Co. of America, 254 S.C. 202, 206, 174 S.E.2d 400, 402 (1970).

As noted, Essex insured Dunes West from December 7, 2001 to June 22, 2002. Scratch's November 1999 complaint contains the same factual allegations as the January 2002 complaint; specifically, that salt water has entered the irrigation system due to deteriorating infrastructure and that the drainage system was congested. The November 1999 complaint also states that the resulting damage (grass burn and course flooding) had manifested itself by November 1999. Such damage allegedly continued into the present coverage period. However, the underlying acts and/or omissions and resulting damage were revealed prior to the coverage period. The flooding and salinization of the irrigation system were not "unexpected events" during the coverage period. Prior to the coverage period, Dunes West was aware that irrigation and water quality issues were allegedly causing grass damage and flooding. As such, Dunes West cannot now claim such events are "unexpected," "by chance," or "unusually sudden." Insurance responds to the risk of an uncertain event. Dunes West seeks insurance for events it was made

aware of prior to the coverage period.[2] Previously identified but continuously occurring "occurrences" are not unexpected, and thus not insurable.

## IV. CONCLUSION

For the reasons stated above, it is therefore **ORDERED** that defendant's motion

---

[2] At the April 10, 2006 hearing Dunes West conceded knowledge of the conditions prior to the coverage period:

| | |
|---|---|
| The Court: | But [Dunes West] knew it [drainage problems] occurred prior to the policy period? |
| Mr. Kefalos: | They had been on notice that there was a problem prior to the policy period. |
| The Court: | And they had been on notice that there was prior problems, either by negligent construction or improper maintenance, prior to the policy period? |
| Mr. Kefalos: | They had been on notice only of a contract claim prior to the policy period, which takes us back to what we were arguing about before. |
| The Court: | You just told me that they tried to remedy the improper maintenance that the homeowners' association was supposed to do, and that was prior to the term of this policy. |
| Mr. Kefalos: | Yes, they did. |
| The Court: | Okay. So [they] knew it was improperly maintained prior to the inception of this policy, and there was damage there from Scratch, right? |
| Mr. Kefalos: | That Scratch was complaining of the damage. |
| The Court: | And the damage was a result of improper maintenance, and your client tried to remedy that, even though it said it wasn't its problem; isn't that what you just told me? |
| Mr. Kefalos: | Yes. |
| The Court: | Okay. And so prior to the policy period, your client knew that Scratch had complained of water problems, and that the water problems were either due to negligently constructed water system or negligently maintained water system. And your client, although it was not responsible for the construction of the water system, assumed responsibility to repair the - - to remedy the negligent maintenance of the water system prior to the Essex policy? |
| Mr. Kefalos: | Yes, it did. |

(Tr. at 14-15.)

for summary judgment as to plaintiff's claims for breach of contract, bad faith, and bad faith refusal to pay be **GRANTED**.

       **AND IT IS SO ORDERED.**

                                           **DAVID C. NORTON**
                                           **UNITED STATES DISTRICT JUDGE**

**June 29, 2006**
**Charleston, South Carolina**